394 So.2d 744 (1981)
TENNECO, INC., Plaintiff-Appellee,
v.
The HAROLD STREAM INVESTMENT TRUST et al., Defendants-Appellants.
No. 8060.
Court of Appeal of Louisiana, Third Circuit.
February 4, 1981.
*745 Camp, Carmouche, Palmer, Barsh & Hunter, A. J. Gray, III, Lake Charles, for defendants-appellants.
Shotwell, Brown & Sperry, George Wear, Jr., Monroe, for plaintiff-appellee.
Before DOMENGEAUX, STOKER, and LABORDE, JJ.
DOMENGEAUX, Judge.
On March 10, 1980, plaintiff, Tenneco, Inc., filed expropriation petitions seeking a 30-foot wide right-of-way for an existing pipeline, which it operates across tracts of land located in Cameron Parish, Louisiana. These tracts of land are owned by the defendants in this suit, The Harold Stream Investment Trust, The Sandra Stream Investment Trust, and The Gray Stream Investment Trust, and the defendant in the consolidated suit, Matilda Gray Stream.[1] (All the defendants are hereinafter referred to as landowners). The landowners filed numerous exceptions, all of which were dismissed by the trial court and are no longer at issue, and then answered the petition, denying most of Tenneco's allegations.
Since Tenneco requested a jury trial on the issue of just compensation, the trial of all other issues was held before the trial judge on April 14, 1980. The matter was taken under advisement until April 18, 1980, when the court issued notice of its ruling in favor of the defendant-landowners. Judgment was signed on May 9, 1980, dismissing with prejudice Tenneco's demands for expropriation. Tenneco then timely filed a motion for a new trial. A hearing on this motion was held on May 22, 1980, after which the trial court granted a new trial for the limited purpose of amending the judgment to be without prejudice. That same day, the court signed the amended judgment dismissing the cases without prejudice. The amended judgment specifically set aside the judgment signed in the consolidated cases on May 9, 1980.
On July 28, 1980, a petition for appeal was filed by the landowners and an order of appeal was granted on the same date. The landowners have appealed only from that portion of the amended judgment which dismissed the cases without prejudice. They argue that the cases should have been dismissed with prejudice.
On September 11, 1980, Tenneco filed a motion to dismiss the appeal, arguing that the appeal was not timely perfected within the delay authorized by law. In addition, Tenneco has answered the appeal and seeks to reverse the judgment dismissing its principal expropriation demands. Tenneco argues that the evidence it presented sufficiently proved that the taking of the requested right-of-way was necessary and served a public purpose.
We will first decide Tenneco's motion to dismiss before determining (1) whether the evidence Tenneco produced was sufficient to prove its entitlement to a right-of-way, and (2) whether Tenneco's demands should have been dismissed with or without prejudice.

MOTION TO DISMISS
Tenneco moves to dismiss the devolutive appeal of the landowners in these cases on the ground that the appeal was not timely perfected. Tenneco argues that since the landowners' devolutive appeal was not perfected *746 until some 67 days after the court's judgment of May 22, 1980, which amended the original judgment to be without prejudice but which otherwise denied the motion for a new trial, their appeal should be dismissed.
The delay for perfecting a devolutive appeal is set out in La.C.C.P. Article 2087:
"Except as otherwise provided in this Article or by other law, an appeal which does not suspend the effect or the execution of an appealable order or judgment may be taken within sixty days of:
(1) The expiration of the delay for applying for a new trial, as provided by Article 1974, if no application has been filed timely;
(2) The court's refusal to grant a timely application for a new trial, if the applicant is not entitled to notice of such refusal under Article 1914; or
(3) The date of the mailing of notice of the court's refusal to grant a timely application for a new trial, if the applicant is entitled to such notice under Article 1914.
When a devolutive appeal has been taken timely, an appellee who seeks to have the judgment appealed from modified, revised, or reversed as to any party may take a devolutive appeal therefrom within the delays allowed in the first Paragraph of this Article or within ten days of the mailing by the clerk of the notice of the first devolutive appeal in the case, whichever is later."
Tenneco argues that since a new trial was applied for, the sixty day period should begin to run from May 22, 1980, the date of the court's refusal to grant a new trial. However, the judgment of May 22, 1980, not only denied the motion for a new trial; it also vacated the May 9, 1980, judgment and rendered an amended judgment.
When an amended judgment is rendered, the parties have a new delay in which to apply for a new trial. Therefore, the delay for a devolutive appeal begins to run from the expiration of the delay for applying for a new trial, as provided by La.C.C.P. Article 1974, if no new application for a new trial has been filed timely. La.C.C.P. Article 2087(1).
An identical situation was presented to this Court in Quinney v. Maryland Casualty Co., 344 So.2d 1186 (La.App. 3rd Cir. 1977). In Quinney, judgment was rendered and a new trial was applied for timely. The trial court denied the motion for a new trial, but amended its previous judgment. This Court held that the delay for an appeal did not begin to run until the seven day delay period provided for applying for a new trial from the amended judgment had expired. For the same result, see Ware v. Wilson, 283 So.2d 813 (La.App. 2nd Cir. 1973).
In accordance with Quinney, supra, the landowners here had, under La.C.C.P. Articles 1974 and 2087(1), sixty days from June 2, 1980, which is seven clear days from the amended judgment of May 22, 1980, in which to perfect their devolutive appeal. The landowners' appeal, perfected on July 28, 1980, was thus timely and Tenneco's motion to dismiss the appeal is denied.
DID THE TRIAL COURT ERR BY DISMISSING TENNECO'S EXPROPRIATION SUITS?
Tenneco, Inc. is a foreign corporation engaged in the business of transporting natural gas by way of pipeline to supply the public with natural gas. As such, it is entitled, under La.R.S. 19:2(5) to expropriate needed property. Pursuant to Article 1, Section 4 of the Louisiana Constitution of 1974, expropriation may not occur except for a public and necessary purpose and with just compensation paid to the owner. The expropriating authority bears the burden of proving that the taking serves a public and necessary purpose. The trial court in this instance concluded that Tenneco failed to carry its burden of proof that the taking was for a necessary public purpose. We agree for the reasons given by the trial court, which we quote as follows:
"... The feature of this expropriation suit that is somewhat unusual is that the pipeline is already in existence, having been constructed as a result of conventional *747 agreements at an earlier time. The term of the earlier agreements expired, negotiations for a permanent right-of-way were not fruitful and the suits resulted.
. . . . .
On December 17, 1959, Matilda Geddings Gray, for herself and for others, granted a right-of-way to Socony Mobil Oil Company, Inc. traversing land in Cameron Parish, Louisiana. The purpose of the right-of-way was for construction of a pipeline. That conventional right-of-way agreement provided that it was effective for a `maximum period of twenty (20) years from the date hereof ...' In 1965 Socony Mobil Oil Company, Inc. transferred to Tennessee Gas Transmission Company twenty-four (24) miles of sixteen (16) inch pipeline together with all rights-of-way pertaining thereto. Included in that transfer was the right-of-way across the subject property. On April 8, 1966 Tennessee Gas Transmission Company changed its name to Tenneco, Inc. Documentation of the change was filed with the Secretary of State of Louisiana on May 3, 1966.
The Federal Power Commission held a hearing on April 18, 1968 to approve the transfer to Tennessee Gas Pipeline Company (a division of Tenneco, Inc.) of the twenty-four (24) mile portion of the Cameron-Creole line then owned by Mobile Oil Corporation. The commission approved the transfer of ownership and came to these official conclusions:
`1) Applicant, Tennessee Gas Pipeline, a division of Tenneco, Inc., is a "natural gas company" within the meaning of the natural gas act.
2) The facilities herein before described, as more fully described in the application, will be used in the transportation of natural gas in interstate commerce subject to the jurisdiction of the commission, and the acquisition and operation of the facilities by the applicant are subject to the requirements of Section 7(c) and (e) of the Natural Gas Act.
3) The acquisition and operation of the facilities are required by the public convenience and necessity, and the certificate should be issued as hereinafter ordered.'
The certificate from the FPC, now the Federal Energy Regulatory Commission, was introduced into evidence at the hearing. Because the pipeline is already constructed and is in service currently, the plaintiffs did not feel it was necessary to present the usual evidence regarding route selection. The plaintiffs explained their approach in a memorandum brief with the following language:
`Therefore, many traditional questions such as selection of the route of the pipeline or the necessity of the taking of a servitude across a particular tract of land as opposed to the necessity of taking in general are not involved in these proceedings.'
The Court feels that this is an error and this approach has resulted in a failure of the plaintiff to carry the burden imposed upon it by appropriate law.
An expropriation proceeding is in derogation of the common right to own property. The laws attendant thereto and in furtherance thereof must be strictly construed. Each step in the proceeding must be carefully scrutinized. Texas Gas Transmission Corporation versus Soileau, [251] So.2nd 104 (La.App. 3rd Circuit, 1971).
Tenneco produced evidence to show that it is a business corporation involved in the transmission of natural gas by way of pipelines. It produced the Certificate of Public Convenience and Necessity referred to above, whereby it is identified as a "natural gas company" and wherein the pipeline system acquired from Mobil Oil Company was designated as one intended for use to transport natural gas in interstate commerce.
It is well settled in the State of Louisiana that the issuance of a Certificate of Public Convenience and Necessity cannot be attacked collaterally by a state court. Tennessee Gas Transmission Company *748 versus Violet Trapping Company, 200 So.2nd 428 (La.App. 4th Circuit 1967). Sique [Sique] versus Texas Gas Transmission Company [D.C.], 235 Fed.Supp. 155. But, the fact that the use of this line has been approved by the FERC for transportation of natural gas in interstate commerce does not preclude the raising of the question in the state court as to whether or not Tenneco is fulfilling the purpose of the certificate.

Tenneco produced no evidence as to the origin of the natural gas; its destination; whether the prospective sales will benefit the public as contemplated in the certificate of 1968; and whether the ultimate destination would qualify the transactions regarding the natural gas as interstate in nature. The filing of a Certificate of Public Convenience and Necessity in an expropriation proceeding is not conclusive on the issue of the right to expropriate the property in question. [Texas Gas Transmission Company v. Soileau, 251 So.2d 104 (La.App. 3rd Cir. 1971)]. The plaintiff must produce some evidence that its particular expropriation will further the aid of the administrative action of the Federal Energy Regulatory Commission.
In order to exercise the power granted to condemnors in L.R.S. Title 19, the plaintiff holding a Certificate of Public Convenience and Necessity must demonstrate that this particular taking is pursuant to the certificate. It is said that the condemnor has considerable discretion in selecting one location over another and the condemnor will be supported absent fraud, bad faith, or abuse of the privilege. On the basis that the right-of-way being sought by the condemnor in these proceedings already has the condemnor's pipe located thereon and is in operation, no evidence was presented at all on this question.
Because of the strict construction required in expropriation proceedings we cannot make assumptions, in the total absence of evidence, that the route selection is best simply because the condemnor has made its decision. Some evidence must be presented to the court for review to see whether or not its privilege has been abused.
It may be felt that the plaintiff here can rely on the presumption that the route selection and the selection of right-of-way widths and limiting conditions proposed by a condemnor for public purposes are made upon sound engineering principles. But, here the presumption should not be in effect because 1) the plaintiff has failed to show the court what the purpose of its taking will be (relying on a FERC Certificate stating that the line is intended for transmission of natural gas in interstate commerce to serve the public interest) and; 2) the certificate was issued twelve (12) years ago incidental to the transfer of an existing pipeline from Mobil to Tenneco. Whatever engineering principles were considered in the construction of the existing lines twenty years ago, the minimum burden which the plaintiff would have to shoulder would be to demonstrate that the considerations of twenty years ago are still pertinent. For instance, the width of the servitudes in the conventional rights-of-ways were agreed upon by consenting parties. Those agreements reflect that the right-of-way width would be one hundred (100) feet for construction and would revert to the size of the pipe except for purposes of entrance thereon to maintain or repair. The court cannot be left to speculate that this right-of-way width is still appropriate. Also, there may be present need for limiting conditions which did not exist twenty (20) years ago. Since the plaintiff did not present a plan on its use of the right-of-way, the court could not direct how the use would be limited to protect the rights of the defendant. The location of this line along with the attendant features was decided upon by Socony Mobil Oil Company more than twenty (20) years ago. For the condemnor to defer its engineering decisions to unidentified engineers who made the decision for a different company at a different time and, *749 perhaps, for different purposes, simply on the basis that a pipeline is already in place, amounts to an abuse of the privileges of expropriation.
For the above reasons, with which we concur, the trial court held that Tenneco failed to prove its right to expropriate the particular property involved against all defendants.

SHOULD TENNECO'S SUITS BE DISMISSED WITH OR WITHOUT PREJUDICE?
Originally, the trial court dismissed Tenneco's suits with prejudice. However, after a hearing on Tenneco's motion for a new trial, the court reversed itself and ordered that Tenneco's suits be dismissed without prejudice. We think the trial court was correct in doing so.
In acceding to Tenneco's request that its demands be dismissed without prejudice, the trial court said, in pertinent part:
"... [H]ere Tenneco is clothed with the right and powers of the sovereign, and Tenneco cannot extinguish that by conventional means, and I think that this power cannot be lost by accident, either. I think the failure to ... what the Court has considered the failure of counsel to adequately or sufficiently present its case will not result in the loss of the sovereign power. Consequently, the dismissal should have been without prejudice."
We agree.
The case of Tennessee Gas Transmission Company v. Violet Trapping Company, 200 So.2d 428 (La.App. 4th Cir. 1967), declared that a public utility which enjoys the right of expropriation by virtue of its serving public purposes cannot contract away that right granted to it by law for the public benefit. The Fourth Circuit based its assertion upon the legal principle found in La. C.C. Art. 2626, which Article states the basis of the right to expropriate in the following manner:
"The first law of society being that the general interest shall be preferred to that of individuals, every individual who possesses under the protection of the laws, any particular property, is tacitly subjected to the obligation of yielding it to the community, wherever it becomes necessary for the general use."
We think that the trial court was correct in extending the rule of the Tennessee Gas Transmission case to the instant one in which an expropriating authority (Tenneco) faces the loss of its right to expropriate simply because evidence that was ostensibly available was not produced due to an erroneous belief that a certificate of public convenience and necessity and the fact that a pipeline was already constructed constituted sufficient evidence to prove the expropriator's entitlement to a right-of-way. We do not believe the right to expropriate can be lost in such a manner.
Our decision is bolstered by the decision of Parish of Jefferson v. Harimaw, Inc., 297 So.2d 694 (La.App. 4th Cir. 1974). There, the expropriating authority, Parish of Jefferson, instituted an expropriation proceeding against the defendant. The defendant timely filed its answer. Thereafter, but before trial, the trial court, on Parish of Jefferson's ex parte motion, dismissed the expropriation proceeding without prejudice, apparently in violation of La.C.C.P. Article 1671 which provides that if an application by plaintiff to dismiss his suit is made after the defendant makes a general appearance, the court may refuse to grant the judgment of dismissal except with prejudice. However, the Court of Appeal affirmed, reasoning as follows:
"... To dismiss this suit with prejudice would terminate forever the right of the plaintiff political subdivision to exercise its statutory right to expropriate the property. LSA-R.S. 19:2. A dismissal `other than without prejudice' as urged by defendant would undeniably be an abuse of discretion."
Although the Harimaw case was dismissed prior to trial, whereas the instant case was dismissed after trial, the rationale is the same in both: an expropriating authority's right to expropriate should not be forever terminated by dismissing its suit *750 with prejudice, especially under this set of circumstances.
From the evidence already before us, it appears likely that Tenneco will be able to supply evidence which proves that it is entitled to a right-of-way across the landowners' tracts of land. Plaintiff has already proven to the trial court's satisfaction that it purchased the 24 miles of pipeline in question from Socony Mobil Oil Company in 1965 and that it obtained a Certificate of Public Convenience and Necessity from the Federal Power Commission in 1968. It appears that that certificate is still valid. It also appears that the pipeline is still being used by Tenneco to transport oil, even though the twenty year conventional right of way granted by the landowners has expired. Only Tenneco's reliance upon its certificate of public convenience and necessity caused it to neglect to produce other evidence proving its right to obtain a right-of-way along the existing pipeline route. Tenneco claims that it can and will offer that evidence if given the chance. We believe it must be given that chance.

DECREE
For the above and foregoing reasons, the judgment of the district court which dismissed, without prejudice, the expropriation suit of plaintiff, Tenneco, Inc., which sought a right-of-way across tracts of Cameron Parish land belonging to the defendants herein, The Harold Stream Investment Trust, The Sandra Stream Investment Trust, and The Gray Stream Investment Trust, is affirmed. Costs of this appeal are assessed one-half to Tenneco, Inc., and one-half to the defendants.
AFFIRMED.
NOTES
[1] Since this case and the one which follows, Tenneco, Inc. v. Stream, La.App., 394 So.2d 750, involved substantially the same issues, they were consolidated at trial. Thus we will discuss the issues only in this case, # 8060, although a separate opinion is being handed down this day in # 8061.